STATE of Iowa, Plaintiff,

v.

**IOWA DISTRICT COURT FOR JOHNSON COUNTY,**
Defendant.

No. 97–577.

Supreme Court of Iowa.

Aug. 22, 1997.

Rehearing Denied Sept. 18, 1997.

Thomas J. Miller, Attorney General, Bridget A. Chambers, Assistant Attorney General, and J. Patrick White, County Attorney, for plaintiff.

Joseph C. Johnston of Johnston, Potterfield & Nathanson, P.C., Iowa City, for defendant.

David Welu and Joseph P. Weeg, Des Moines, for amicus curiae Iowa County Attorneys Association, Inc.

Jay Shaw, Iowa City, pro se, amicus curiae.

HARRIS, Justice.

We granted a writ of certiorari to review district court orders directing a grand jury to investigate a shooting death caused by a police officer, disqualifying the county attorney, and appointing a special prosecutor. We conclude the orders exceeded the court's authority and sustain the writ.

Although it serves as background, the question before us is not whether criminal charges should be pressed against the officer involved in this tragedy. The question instead is whether the district court inappropriately became involved in the prosecutorial process. We think the effect of the challenged orders was to countermand a county attorney's judgment call and was therefore not an appropriate judicial function.

At about 11 p.m. on August 30, 1996, Eric Shaw was peaceably on the premises of his parents' business in Iowa City. There is no hint that his presence was in any way unlawful. A light was on and the door to the exterior was open. A plainclothes police officer suspected a break-in was in progress and summoned two other officers, including Jeffrey Gillaspie, to help investigate. Other break-ins were said to have occurred in the vicinity, and Gillaspie claims to have observed what could have been pry marks at the entry way. The officers entered with guns drawn. At the instant they entered and confronted Shaw, Gillaspie discharged his gun striking and killing him. There is no indication of any personal animosity, or even

that any of the officers were acquainted with Shaw.

By October 3, following an extensive investigation by the Iowa division of criminal investigation, the local county attorney, J. Patrick White, publicly announced his conclusion that Gillaspie had been negligent but had committed no crime. Accordingly White said he would not press charges or convene a grand jury to consider them.

Among those reacting to White's announcement was at least one member of the 1996 Johnson County grand jury, Lori Klockau, an Iowa City attorney. Klockau visited with other grand jurors and with White. White strongly defended his decision. Judge L. Vern Robinson of Iowa City, with whom Klockau also visited, reminded her of various powers of the grand jury, including the fact that the grand jurors have authority to convene themselves by agreement of their majority. *See* Iowa R.Crim. P. 3(4)(j) (grand jury to convene by order of district judge, or request of county attorney, or request of a majority of grand jurors). Judge Robinson also pointed out various practical obstacles to investigating the Shaw matter, especially the strong opposition of the county attorney who would normally shepherd the work of the grand jury. *See* Iowa Code § 331.756(8) (1995) (duty of county attorney to attend grand jury, to examine witnesses and to give advice).

Although the 1996 grand jurors continued to visit about the case, in the end they did not meet on the Eric Shaw matter. Klockau published her concerns in the press and pursued the matter into 1997. She wrote to August F. Honsell, the chief judge of the judicial district, and enclosed a letter that she asked to be shown to the 1997 grand jury when it convened. The enclosed letter informed the grand jurors, among other things, of their right to convene themselves in reference to the Shaw matter and their power to request appointment of a special prosecutor. The letter urged the grand jurors to consider whether they should act. Judge Honsell promptly declined the request, stating that a "court must remain neutral and cannot give any impression that it supports or opposes any matter that may be brought before it."

Judge William R. Eads became involved in the matter at his own instance. Klockau's law partner was in court in Cedar Rapids where Judge Eads was presiding. During a recess Judge Eads approached Klockau's partner and mentioned he had read news articles concerning the difficulty Klockau was experiencing in convening a grand jury. The judge said that he had previously convened a grand jury, apparently under analogous circumstances, in another county.

When this conversation was repeated to Klockau, she called Judge Eads who invited her to write him a letter requesting that he convene a grand jury. As a result, Judge Eads issued an order on March 3, 1997, requiring the 1997 grand jury, when it later convened, to investigate the Shaw matter. Four days later, on March 7, Chief Judge Honsell entered a routine order calling for the impaneling of the 1997 grand jury the following April 8.[1] On April 1, 1997, Judge Eads entered a further order appointing special counsel, Joseph Johnston, to "handle all aspects of the case," based on the court's "inherent power," citing *State v. Jones*, 306 Mo. 437, 268 S.W. 83 (1924).

The State filed the present certiorari proceeding to challenge Judge Eads' orders. We granted the writ and ordered a limited remand to consider a motion for reconsideration the State had meanwhile filed in district court. The district court confirmed its rulings and listed its reasons for appointing special counsel, noting: (1) White had commented on his personal belief of the officer's guilt or innocence; (2) White stated he would not prosecute the case even if the grand jury returned an indictment; (3) White would be a likely witness because he was involved in the investigation; and (4) the perception of impropriety or bias would not be removed if the attorney general's office prosecuted the matter.

---

1. Under Iowa rule of criminal procedure 3(1), the chief judge of each judicial district specifies by order when the grand juries should be impaneled in the various counties of the district. The practice under this rule is for the presiding district judge to superintend the drawing of the grand jury at the time specified in the chief judge's order.

I. In our criminal justice system, the decision whether to prosecute, and if so on what charges, is a matter ordinarily within the discretion of the duly elected prosecutor. *State v. Kyle,* 271 N.W.2d 689, 693 (Iowa 1978); *State v. Uebberheim,* 263 N.W.2d 710, 712 (Iowa 1978). The decision whether to bring charges is at the heart of the prosecutorial function. *Hike v. Hall,* 427 N.W.2d 158, 160 (Iowa 1988). For this reason it is the general rule that

[a] prosecutor is not subject to judicial supervision in determining what charges to bring and how to draft accusatory pleadings, but is protected from judicial oversight by the doctrine of separation of powers. Thus, mandamus will not lie to compel a prosecuting attorney to institute a criminal prosecution, since the acts of a prosecuting attorney are not purely ministerial acts, but involve, in large measure, learning and the exercise of discretion.

63C Am.Jur.2d *Prosecuting Attorneys* § 21, at 134–35 (1997). A prosecutor cannot ethically institute criminal charges when convinced they are not supported by probable cause. Iowa Code of Prof'l Responsibility DR 7–103(A). Under this rule a county attorney owes a duty to do justice, not only for the accusers, but also for the accused. Whether there was probable cause to prosecute Gillaspie was a matter for assessment by the prosecutor, not the court. The decision not to go forward, right or wrong, was not appropriate for judicial oversight.

II. The State does not challenge the authority of a grand jury, if it chooses, to consider the Shaw matter, even over the objection of the county attorney. It does challenge the district court's action in compelling a grand jury to investigate the Shaw matter.

The grand jury is not an adjunct of either the court or the prosecutor.

In fact the whole theory of [the grand jury's] function is that it belongs to no branch of the institutional government, serving as a kind of buffer or referee between the government and the people. Although the grand jury normally operates, of course, in the courthouse and under judicial auspices, its institutional relationship with the judicial branch has traditionally been, so to speak, at arm's length. Judges' direct involvement in the functioning of the grand jury has generally been confined to the constitutive one of calling the grand jurors together and administering their oaths of office.

*United States v. Williams,* 504 U.S. 36, 47, 112 S.Ct. 1735, 1742, 118 L.Ed.2d 352, 365 (1992) (citations omitted).

At the time a grand jury is impaneled the presiding judge informs the grand jury of its responsibilities, including the duty to inquire into all public offenses concerning which they "have or can obtain legal evidence." *See* Iowa R.Crim. P. 3(4)(c). The presiding judge's authority does not extend beyond pointing out the general nature of a grand jury's duties, and it was inappropriate for the district court here to direct the grand jury to specifically inquire into the Shaw matter. This was a decision for the county attorney or the grand jury to make. It was not a judicial function. Other safeguards are in place to review a disastrous prosecutorial decision. The power of a grand jury to convene by majority vote has already been mentioned. When it does, no judicial order is necessary to implement the majority decision. We note that the challenged order directing a grand jury to investigate could not be justified as an implementation of a will of the 1996 grand jury's majority to convene. And, in any event, the challenged orders were entered in 1997 after the 1996 grand jury had completed its work. There is another safeguard. The attorney general has supervisory authority over a county attorney under Iowa Code section 13.2(7) and a responsibility to prosecute appropriate cases under Iowa Code section 13.2(2).

III. It was even less appropriate for the district court to claim authority to supplant the elective county attorney with a special counsel. Defendant court suggests this issue is now waived and moot because, it is claimed, White has abandoned the point by stating in court he would voluntarily surrender prosecution of the matter to the attorney

general.[2] We think the point is neither waived nor moot, however, because the order disqualifying White supplanted him with a named special counsel.

 We have recognized a court's inherent power to appoint a special prosecutor when the elected prosecutor disqualifies himself or herself. *State v. Brandt,* 253 N.W.2d 253, 262 (Iowa 1977). The inherent power claimed by the court for substituting prosecutors was surely inappropriately executed here because White could not be said to be disqualified, certainly not involuntarily. He was charged with no misconduct. Any authority to appoint a special prosecutor does not rest solely on dissatisfaction with a prosecutor's professional judgment or performance.

The factual reasons listed by the district court do not justify the order replacing White. They come down to a view that White was a likely witness or that the position White had taken somehow created a personal conflict. It seems highly unlikely that White would be called as a witness. His only knowledge of the case was derived from his routine questioning of those who were witnesses and from observations at the scene of the shooting. This would not ordinarily render a prosecutor subject to subpoena as a witness.

The only "personal" conflict claimed against White is that he has reached a controversial professional judgment about the appropriateness of pressing charges. We do not see this as the sort of personal interest in outcome that could constitute a conflict of interest disqualifying a prosecutor. White's statement that, because he thought a crime had not been committed, he would not prosecute an indictment if returned by the grand jury might well be criticized as intemperate. Even so a prosecutor has authority, and sometimes a responsibility, to move for dismissal of an indictment and the court may so order, stating its reasons. Iowa R.Crim. P. 27(1).

We have not responded to all contentions of the parties because we think what we have said controls the case's outcome. The district court undoubtedly considered its orders to be neutral in that they did not urge return of an indictment, only that the grand jury conduct an investigation for which, the record shows, there was much public clamor. We sustain the writ because, as we have said, the orders amounted to a direct affront to a prosecutorial decision in which a court should take no part. And it scarcely needs to be said that a judge should be society's last person to respond to public clamor. In *State v. Glanton,* 231 N.W.2d 31, 35 (Iowa 1975), we noted that the first requirement for the administration of justice is a court which acts with what Edmund Burke called "the cold neutrality of an impartial judge." The orders entered here were partial to one side of the hotly disputed prosecutorial judgment call.

We understand from the plaintiff State's reply brief that the attorney general, at White's request, will proceed in the matter and present the case for consideration by a grand jury. In sustaining the writ we assume the attorney general will comply with the county attorney's request and will present the matter for future grand jury consideration. We however cannot overemphasize that we do not suggest—much less order—that this be done. We leave the matter, as the district court should have, in the hands of those elected for that task.

The case is remanded for an order quashing the challenged district court orders.

**WRIT SUSTAINED.**

---

2. We note that the attorney general's staff is routinely appointed to fulfill special prosecutorial functions in district court.