**IN THE COURT OF APPEALS OF IOWA**

No. 13-1216
Filed July 30, 2014

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**KURT JAN MUNN,**
      Defendant-Appellant.

_____

      Appeal from the Iowa District Court for Black Hawk County, Jeffrey L. Harris, Judge.

      Kurt Munn appeals following a jury verdict finding him guilty of assault while using or displaying a dangerous weapon. **AFFIRMED.**

      D. Raymond Walton of Beecher Law Offices, Waterloo, for appellant.

      Thomas J. Miller, Attorney General, Benjamin Parrott, Assistant Attorney General, Thomas Ferguson, County Attorney, and Peter Blink and Ryan Decker, Assistant County Attorneys, for appellee.

      Considered by Vogel, P.J., and Doyle and Mullins, JJ.

**MULLINS, J.**

Kurt Munn appeals following a jury verdict finding him guilty of assault while using or displaying a dangerous weapon. He alleges the district court abused its discretion by preventing him from inquiring on cross-examination into either the victim's mental health issues or the victim's desire for the charges to be dropped against Munn. Munn also argues the court erred in refusing to grant him a deferred judgment during sentencing.

## I. BACKGROUND FACTS AND PROCEEDINGS

On the morning of January 17, 2013, Munn was driving through Cedar Falls and became involved in a road rage incident with another driver, Michael Smith. Munn was seventy-one years old at the time of the incident. Although the testimony is conflicting, both parties appear to have been travelling northbound on a four-lane road when Smith came under the impression Munn had cut him off. In response, Smith sped ahead of Munn's vehicle and quickly pulled in front of it, while allegedly shaking his fist at Munn. Munn in turn gestured obscenely at Smith. As the two vehicles continued down the road with Smith in the lead, Smith slowed to a speed greatly below the posted speed limit. Munn continued to follow behind Smith as they both turned onto another four-lane road.

At this point Smith believed Munn was intentionally following him, and Munn was under the impression Smith was "deliberately controlling him." Both parties testified they were afraid of the other learning where they lived. Neither was aware they both resided in and were returning to the same neighborhood. Smith eventually gestured behind him for Munn to pull over, switched on his

hazard lights, and pulled his vehicle over onto a short gravel access road.  Munn followed and parked behind Smith.

The nature of the ensuing events is contested by both parties.  According to Munn's testimony at trial, Smith exited his vehicle first and started screaming at Munn while waving his arms.  As Munn got out of his vehicle, he retrieved his handgun.  He was licensed to carry the weapon.  Both parties stood beside their respective vehicles and began arguing.  Munn contends he held the gun in his left hand down at his side, in plain sight of Smith, with his finger not on the trigger.  When asked at trial if he had any intention to use the gun at this point, Munn replied, "I only had it available.  I want[ed] to see what this other guy [was] going to do."  Smith began to approach Munn, yelling with his fists clenched.  Munn raised his right arm, a prosthetic outfitted with a metal hook, and told Smith to stop because he felt threatened.  Smith continued to approach him.  When Smith was within fifteen feet of Munn, Munn raised his gun and pointed it at Smith's chest, telling him to stop or he would shoot.  According to Munn, at this point "[Smith] instantly stopped and shut up."  Munn then lowered his weapon, got back into his vehicle, and proceeded to leave the scene.

Smith's testimony of the incident differs from Munn's.  According to Smith, upon exiting his vehicle he put his hands in his pockets, so that he "wouldn't look aggressive."  As Smith stood next to his vehicle, Munn got out of his vehicle and immediately pointed his gun at Smith.  Munn told Smith that if he took another step Munn would kill him.  Smith exclaimed to Munn he was in severe chronic

pain at the time and that "if you pulled the trigger, you'd be doing me a favor."[1] He began to approach Munn while yelling and cursing. After Munn again told Smith he would shoot him if he came any closer, Smith stopped and told Munn he would go to jail for threatening him with a handgun. Munn lowered his handgun at this and, after a further exchange of words with Smith, got into his vehicle and left the scene.

After a police investigation, Munn was charged with assault while using or displaying a dangerous weapon, in violation of Iowa Code section 708.2(3) (2013). Munn pled not guilty and claimed self-defense, arguing Smith was the aggressor in the incident and that his actions were justified. Prior to trial, Smith revealed in his deposition that he suffered from learning disabilities and bipolar manic depression. He also revealed he had not taken any medication prescribed to him since the 1980s. Munn intended to use this information while cross-examining Smith, to challenge Smith's perception and recollection of the events, as well as to question Smith's behavior at the time of the incident.

At trial, the district court sustained the State's motion in limine and prevented Munn from cross-examining Smith about his mental health. The court also sustained the State's relevancy objection to Munn asking Smith about his previous desire to have the charges against Munn dropped. Following a three-day trial, the jury returned a guilty verdict. The court sentenced Munn to a jail term of 365 days, all but six days of which were suspended during Munn's good behavior. He was also placed on formal probation for two years and ordered to

---

[1] Smith had been returning from a chiropractic appointment to treat complications stemming from a prior neck injury.

complete an approved course for anger management. Munn filed a timely notice of appeal.

## II. SCOPE AND STANDARDS OF REVIEW

We review the district court's evidentiary rulings for abuse of discretion. *State v. Neiderbach*, 837 N.W.2d 180, 190 (Iowa 2013). A district court abuses its discretion when its decision rests "on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Rodriquez*, 636 N.W.2d 234, 239 (Iowa 2001). "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *Id.* To the extent Munn contends the district court erred in sentencing him, our scope of review is for correction of errors at law. *State v. Valin*, 724 N.W.2d 440, 443-44 (Iowa 2006). If a sentence falls within the statutory limits, it will be set aside only for an abuse of discretion. *Id.* at 44.

## III. VICTIM'S MENTAL HEALTH DIAGNOSIS

Munn contends the district court abused its discretion when it sustained the State's motion in limine and prevented him from cross-examining Smith about his mental health. Munn argues Smith's mental health information is relevant to his claim of self-defense and should have been admitted. He wanted to show at trial that Smith's diagnosis demonstrates "not only his tendency for explosive behavior but also his difficulties with correctly perceiving events and reacting appropriately to them." Munn alleges the district court misconstrued the issue as a request for Smith's confidential information under Iowa Code sections

228.6(4)(b) and 622.10(4). He also argues Smith waived any right to confidentiality by voluntarily disclosing his mental health issues at his deposition.

The right of an accused in a criminal prosecution to confront adverse witnesses is guaranteed in the Sixth Amendment to the United States Constitution. *Davis v. Alaska*, 415 U.S. 308, 315 (1974). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Id.* at 316. A witness's deposition may be used at trial for a variety of purposes, "so far as admissible under the rules of evidence." Iowa R. Civ. P. 1.704.

Here, the State's motion in limine sought to limit "any claim that the victim in this case, Michael Smith, suffers from, has suffered, or did on the date in question suffer from any mental health impairment. Any mention of the above would be irrelevant and unfairly prejudicial to the State."

Smith had willingly disclosed his mental health issues in his deposition. In fact, he initially did so without being prompted by Munn, revealing his diagnosis of bipolar disorder in response to a question of whether he had completed any form of higher education. He revealed he had not seen a doctor for his condition since the 1980s or taken any prescribed medication since that time. He stated this medication was supposed to help him "stay calm." Smith also stated: "[t]hree or four times a year I would have bouts of depression and [] just try to maintain myself and function." Furthermore, he stated these bouts occurred in the fall and winter. During this discussion Smith never once displayed any sign of hesitation,

embarrassment, or concern in disclosing the details of his diagnosis. The State raised no objection to the questions or testimony during the deposition.

During argument for the State's motion in limine to prevent Munn from cross-examining Smith about these statements he made in his deposition, the court repeatedly expressed concern for the privacy of Smith's mental health and mental health records:

> THE COURT: But you're asking me to disclose his mental health—potentially his mental health records?
> [Defense Counsel]: No, we're not asking to disclose the records. We're just asking to be able to ask him what he's already told us.

After Munn explained the nature of his intended line of questioning and how it was relevant to his claim of self-defense, the court remarked: "For purposes of the court's analysis, I believe that Iowa Code section 228.6(4)(b) and Iowa Code section 622.10(4) govern."

Iowa Code section 228.6(4)(b) states: "Mental health information may be disclosed in a criminal proceeding pursuant to section 622.10, subsection 4." Section 622.10(4) states:

> 4. a. Except as otherwise provided in this subsection, the confidentiality privilege under this section shall be absolute with regard to a criminal action and this section shall not be construed to authorize or require the disclosure of any privileged records to a defendant in a criminal action unless either of the following occur:
> (1) The privilege holder voluntarily waives the confidentiality privilege.
> (2) (a) The defendant seeking access to privileged records under this section files a motion demonstrating in good faith a reasonable probability that the information sought is likely to contain exculpatory information that is not available from any other source and for which there is a compelling need for the defendant to present a defense in the case. Such a motion shall be filed not later than forty days after arraignment under seal of the court.

Failure of the defendant to timely file such a motion constitutes a waiver of the right to seek access to privileged records under this section, but the court, for good cause shown, may grant relief from such waiver.

(b) Upon a showing of a reasonable probability that the privileged records sought may likely contain exculpatory information that is not available from any other source, the court shall conduct an in camera review of such records to determine whether exculpatory information is contained in such records.

(c) If exculpatory information is contained in such records, the court shall balance the need to disclose such information against the privacy interest of the privilege holder.

(d) Upon the court's determination, in writing, that the privileged information sought is exculpatory and that there is a compelling need for such information that outweighs the privacy interests of the privilege holder, the court shall issue an order allowing the disclosure of only those portions of the records that contain the exculpatory information. The court's order shall also prohibit any further dissemination of the information to any person, other than the defendant, the defendant's attorney, and the prosecutor, unless otherwise authorized by the court.

b. Privileged information obtained by any means other than as provided in paragraph "a" shall not be admissible in any criminal action.

Both section 228.6(4)(b) and 622.10(4) are of recent origin, passed by our legislature in response to our supreme court's decision in *State v. Cashen*. *See State v. Thompson*, 836 N.W.2d 470, 481 (Iowa 2013). In *Cashen*, the defendant argued the mental health records of the victim were relevant to his claim of self-defense by relating to the victim's credibility and "her propensities for violence and explosive behavior." *State v. Cashen*, 789 N.W.2d 400, 404 (Iowa 2010), *superseded by statute*, 2011 Iowa Acts ch. 8, § 2. The *Cashen* court proceeded to outline a five-step protocol for a defendant's attorney to gain access to a victim's mental health records. *Id*. at 408–10. The legislature responded in its next session by adding sections 228.6(4)(b) and 622.10(4) to the Iowa Code, creating a new protocol which heightened a defendant's threshold

showing to warrant "the discovery of privileged medical records, including mental health records, in a criminal case." 2011 Iowa Acts ch. 8; *see also Thompson*, 836 N.W.2d at 481.

It is clear that sections 228.6(4)(b) and 622.10(4) of the Iowa Code govern the discovery of privileged medical *records*. Here, Munn was making no attempt to obtain or disclose Smith's medical records. Rather, Munn was attempting to cross-examine Smith based solely on the information he had voluntarily revealed in his deposition. Sections 228.6(4)(b) and 622.10(4) do not apply. Accordingly, we find the district court abused its discretion in holding these statutes governed its analysis of whether Munn could cross-examine Smith about his mental health.[2] *See Everly v. Knoxville Comm. Sch. Dist.*, 774 N.W.2d 488, 492 (Iowa 2009) ("Although our review is for an abuse of discretion, we will correct erroneous applications of law.").

However, we will reverse a trial court's erroneous ruling on the admissibility of evidence only if "a substantial right of the party is affected." Iowa R. Evid. 5.103(a). Harmless evidentiary error is not a basis for relief on appeal. *See State v. Parker*, 747 N.W.2d 196, 209 (Iowa 2008). "An erroneous evidentiary ruling is harmless if it does not cause prejudice." *State v. Redmond*, 803 N.W.2d 112, 127 (Iowa 2011). Where a nonconstitutional error is claimed, "prejudice occurs when the party has 'been injuriously affected by the error or . . . has suffered a miscarriage of justice.'" *Id.* (quoting *Parker*, 747 N.W.2d at 209 (internal quotations omitted)). "[W]e consider a variety of circumstances in

---

[2] In deciding this case, we need not address the question as to whether Smith's mental health status may have been excludable under some other reasoning.

determining the existence of harmless error, including the existence of overwhelming evidence of guilt." *Parker*, 747 N.W.2d at 210. "[U]nder rule 5.103(a) we presume prejudice—that is, a substantial right of the defendant is affected—and reverse unless the record affirmatively establishes otherwise." *State v. Sullivan*, 679 N.W.2d 19, 30 (Iowa 2004).

Here, the fighting issue at trial was whether Munn's assault was justified. The district court instructed the jury:

> A person is justified in using reasonable force if he reasonably believes the force is necessary to defend himself from any imminent use of unlawful force.
> If the state has proven any one of the following elements, then the defendant was not justified:
> 1. The defendant started or continued the incident which resulted in an assault upon Michael Smith.
> 2. An alternative course of action was available to the defendant.
> 3. The defendant did not believe he was in imminent danger of death or injury, and the use of force was not necessary to save himself.
> 4. The defendant did not have reasonable grounds for the belief.
> 5. The force used by the defendant was unreasonable.

The record shows there were no other witnesses to the incident besides Munn and Smith. Munn testified to one version of the events that transpired, and Smith testified to another version. Smith testified that when Munn exited his vehicle he immediately pointed his gun at Smith. Munn testified he did not point his gun at Smith until both men had already argued for some time and Smith began to approach him in a threatening manner. The point at which the argument became an assault is dependent on who the fact finder believed. Based upon this record, any evidence impeaching Smith's credibility as a witness, or relating to Smith's

propensity for aggression, could impact a jury's deliberations regarding any of the above elements.

Munn argues Smith's mental health diagnosis qualifies as such evidence, and that "[he] should have been permitted to cross-examine Smith with regard to his diagnosis and not only his tendency for explosive behavior but also his difficulties with correctly perceiving events and reacting appropriately to them." Although we agree that Smith was qualified to testify as to his own mental health diagnosis, the relevance of a twenty-five-year-old diagnosis is of questionable probative value, especially in light of the lack of expert testimony or more recent diagnosis or treatment.

Our supreme court's decision in the 1976 case of *State v. Harvey* is instructive. 242 N.W.2d 300 (Iowa 1976). In *Harvey*, the witness was a victim of violent robbery who testified in-chambers that he had received psychiatric treatment for a "nervous disorder." *Id.* at 334. The defense wanted this testimony read to the jurors to attack the witness's credibility and reliability. *Id.* His offer of proof consisted solely of the witness's testimony that he was hospitalized for a "nervous disorder." *Id.* at 337. The court noted that "[s]ignificantly, this in-chambers testimony did not reveal the nature of the nervous disorder or in any way indicate in what manner [the witness's] credibility might have been affected." *Id.* at 336–37. The court also noted that "nothing was shown as to the effect mere admission to a hospital by reason of a 'nervous disorder' would have on [the witness's] powers of observation, recollection or narration." *Id.* at 337. Thus, *Harvey* held that the defendant's offer of proof was

not sufficiently probative to be introduced to the jury on the issue of the witness's credibility and reliability. *Id.* at 338.

While Munn's offer of proof here is greater than the offer in *Harvey*, it nevertheless falls short of being sufficiently probative to introduce Smith's mental health diagnosis to the jury. Our review reveals no testimony, in either the offer of proof or at trial, establishing a sufficient link between Smith's mental health diagnosis and his credibility or propensity for aggression. It is Smith's behavior— not a mental health diagnosis—that was significant as to whether he was the aggressor. Munn could have questioned Smith on his actual behavior, his state of mind, and his perception of the events without applying the mental health label. Because there is no indication Munn was denied the opportunity to examine Smith on these issues, we cannot say the court's ruling on the motion in limine injuriously affected him or that he suffered a miscarriage of justice. Accordingly, Munn was not prejudiced by the district court when it prevented him from cross-examining Smith about his mental health diagnosis. The court's ruling was harmless.

## IV. VICTIM'S DESIRE TO DROP THE CHARGES

Munn also contends he should have been permitted to cross-examine Smith about his alleged desire to drop the charges against Munn. He claims such evidence is relevant to Smith's perception of the events and also his credibility as a witness. Munn argues had he been permitted to question Smith about the issue, "[t]he jury could have determined that Smith had second

thoughts about his role in the incident and his reaction to it, including contacting the police about it, and that Munn had a viable self-defense claim."[3]

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." Iowa R. Evid. 5.401. Irrelevant evidence is inadmissible and relevant evidence is admissible, "except as otherwise provided by the Constitutions of the United States or the state of Iowa, by statute, by these rules, or by other rules of the Iowa Supreme Court." Iowa R. Evid. 5.402. Rulings on the relevance of evidence are entrusted to the discretion of the trial court and warrant reversal only when the court has abused its discretion. *In re Det. of Williams*, 628 N.W.2d 447, 456 (Iowa 2001).

The record shows Smith testified at trial, under oath, regarding his perceptions of the events that transpired between himself and Munn. His desire to see the charges against Munn dropped would not have any effect on the content of his testimony or the jury's deliberations over whether Munn committed the crime of assault. Neither would it relate to the elements of the crime of assault with a deadly weapon or a self-defense claim. Furthermore, the decision of whether to prosecute a party is solely for the prosecutor. *See State v. Iowa Dist. Ct.*, 568 N.W.2d 505, 508 (Iowa 1997). We find the district court did not abuse its discretion when it ruled such evidence irrelevant and inadmissible.

---

[3] We decline to speculate about the plethora of reasons which may have caused Smith to request dismissal of the charges.

## V.  SENTENCING

Finally, Munn contends the district court abused its discretion by refusing to grant him a deferred judgment during sentencing.  Although he concedes the court adequately considered the appropriate sentencing factors, Munn alleges it "drew unreasonable and untenable conclusions."  He argues the court inappropriately considered what could have happened had Munn pulled the trigger during his confrontation with Smith.  Munn also claims the court did not give sufficient weight to his concern that Smith would have followed him home or that he could have perceived Smith to be reaching for a weapon in his pockets.

The district court is required to choose the sentencing options which, in its discretion, provide the best opportunity for rehabilitation of the defendant and the protection of the community.  Iowa Code § 901.5.  To this end, the court is to consider "all pertinent matters . . . including the nature of the offense, the attending circumstances, the defendant's age, character, and propensities or chances for reform."  *State v. Johnson*, 513 N.W.2d 717, 719 (Iowa 1994).  In exercising its discretion, a court must state its reasons for imposing a particular sentence, but is "generally not required to give its reasons for rejecting particular sentencing options."  *State v. Thomas*, 547 N.W.2d 223, 225 (Iowa 1996).  As such, "[s]entencing decisions of the district court are cloaked with a strong presumption in their favor."  *Id.*

Here, the record clearly shows the district court sentenced Munn for the charge of which he was found guilty, not "impermissible uncharged conduct." The court properly considered the goals of sentencing, the nature of the case,

and the attending circumstances. It also considered Munn's age, his lack of prior major criminal history, his character, and his chances for reform. It was appropriate for the court to draw attention to particular facts of the case when stating the reasons for its sentence. We therefore find the court did not abuse its discretion in sentencing Munn.

## VI. CONCLUSION

Although the district court erroneously relied on the wrong code sections when it prevented Munn from cross-examining Smith about his mental health diagnosis, the evidentiary error did not prejudice Munn and as such was harmless. In addition, because Smith's desire to drop the charges against Munn was irrelevant as to whether the crime was committed, the district court did not abuse its discretion by disallowing examination of Smith on that issue. Finally, because the court adequately considered the appropriate sentencing factors, it did not abuse its discretion in sentencing Munn.

**AFFIRMED.**