# IN THE COURT OF APPEALS OF IOWA

No. 22-0813
Filed November 21, 2023

**TIMOTHY DUANE SMITH,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Cass County, Greg W. Steensland,

Judge.

Applicant appeals the denial of his postconviction-relief application.

**REVERSED AND REMANDED.**

Gary Dickey of Dickey, Campbell, & Sahag Law Firm, PLC, Des Moines, for

appellant.

Brenna Bird, Attorney General, and Genevieve Reinkoester, Assistant

Attorney General, for appellee State.

Considered by Tabor, P.J., Schumacher, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2023).

**BLANE, Senior Judge.**

Timothy Smith appeals the denial of his application for postconviction relief (PCR), which raised claims of ineffective assistance of his criminal trial counsel. He claims trial counsel failed to (1) request additional strikes when the trial court refused to grant challenges for cause of prospective jurors, (2) move for a mistrial due to claimed juror misconduct, and (3) call witnesses that had evidence favorable to his defense.[1] We find counsel was ineffective in failing to request additional strikes, since that failure did not preserve Smith's right to appeal and therefore constituted *Strickland* prejudice. We reverse and remand for a new trial.

## I. Background facts and proceedings.

In 2006, Smith married the mother of H.R., who was then four years old. The family first lived in Anita (Cass County) and, when H.R. was in the fourth grade, they moved to Exira (Audubon County). Smith and H.R.'s mother divorced in 2013. A few years after the divorce, H.R. disclosed to her mother and a school counselor that Smith had sexually abused her, which resulted in H.R. being interviewed by police. She stated the sexual abuse started when she was in first or second grade and continued until she was ten years old.

In 2018, Smith was charged with two counts of sexual abuse in the second degree, in violation of Iowa Code sections 709.1, 709.3(1)(b), and 903B.1 (2017), class "B" felonies.[2] At trial, Smith's counsel questioned potential jurors about

---

[1] Smith mentions in passing a claim of cumulative error, but that argument is not developed until the reply brief. We do not address it. *See State v. Carroll*, 767 N.W.2d 638, 644 (Iowa 2009).

[2] One trial information was filed in Audubon County and the other in Cass County, and they were then consolidated for trial in Cass County.

whether Smith needed to testify. Based upon their responses—that in order to return a not guilty verdict Smith would need to testify—Smith's counsel challenged those four panel members for cause. The trialcourt, after some rehabilitation questioning, denied the challenges. Smith's counsel ended up striking two of the four, and the State struck the other two. Smith's counsel did not request additional peremptory strikes to replace those used on the jurors he challenged unsuccessfully.[3] After a three-day trial, at which Smith testified and denied H.R.'s allegations, the jury returned guilty verdicts on both counts. Following denial of his motion for judgment notwithstanding the verdict and for new trial, the court sentenced Smith to twenty-five years on each count, to be served consecutively.

Smith filed a direct appeal in which he raised two issues. First, that the trial court erred in relying on Iowa Rule of Evidence 5.412 and denying him the ability to present evidence to support his defense, and second, that his counsel was ineffective for failing to request additional peremptory strikes. A panel of our court affirmed as to the first issue and preserved the second issue for PCR. *State v. Smith*, No. 18-1500, 2020 WL 1307693, at *3 (Iowa Ct. App. March 18, 2020).

Smith then applied for PCR. The PCR court denied all claims. Smith appeals.

## II.     Standard of review.

The court generally reviews PCR rulings for correction of errors at law. *Dewberry v. State*, 941 N.W.2d 1, 4 (Iowa 2019). Ineffective assistance of counsel

---

[3] Iowa's rule on peremptory strikes is Iowa Rule of Criminal Procedure 2.18(9): "The clerk of court shall prepare a list of jurors called. After challenges for cause are completed, each side, commencing with the state, shall alternately exercise its strikes by indicating the strike upon the list opposite the name of the juror."

involves a constitutional claim, and is reviewed de novo.  *Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021).

> To establish ineffective assistance of counsel, [an applicant] must demonstrate [] counsel failed to perform an essential duty that resulted in prejudice.  Counsel breaches an essential duty when counsel makes such serious errors that counsel is not functioning as the advocate the Sixth Amendment guarantees.  We presume counsel acted competently but that presumption is overcome if we find [applicant] has proved counsel's performance fell below the normal range of competency.  If the claim lacks prejudice, it can be decided on that ground alone without deciding whether the attorney performed deficiently.

*Id.* (internal citations and quotation marks omitted).

To prove breach of an essential duty, an applicant has the burden to show "his trial attorney performed below the standard demanded of a 'reasonably competent attorney.'"  *Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  "Failure to raise a meritless issue does not establish counsel's performance was deficient." *Krogmann v. State*, 914 N.W.2d 293, 306 (Iowa 2018).

**III. Discussion.**

**A.  Failure to request additional peremptory strikes.**

Smith contends his counsel was ineffective for failing to request two additional peremptory strikes for those he had to use to strike the two challenged panel members the court had denied.  *State v. Jonas* requires Smith to show (1) the trial court "improperly refuse[d] to disqualify a potential juror;" (2) Smith "expend[ed] a peremptory challenge" to strike the biased juror; and (3) Smith "specifically ask[ed] the court for an additional strike of a *particular juror* after his peremptory challenges [had] been exhausted."  904 N.W.2d 566, 583 (Iowa 2017)

(emphasis added). "Where the defendant makes such a showing, prejudice will then be presumed." *Id.*

Smith's trial counsel moved to excuse for cause four potential jurors who indicated during voir dire that to find Smith not guilty he would have to testify. The court rejected Smith's for-cause challenges. Afterward, the State struck two, and Smith struck two. But Smith's trial attorney did not ask for additional challenges to replace the two. Nor did he identify any "particular juror" he would strike if given more strikes. Smith argued in his PCR application that counsel's omission was a failure of an essential duty that prejudiced him.

At the PCR trial, Smith's criminal defense counsel acknowledged that he had not reviewed *Jonas* before trial, and that he "[a]bsolutely" could have used two additional strikes. He still did not name which jurors he would have used the strikes on or whether they ended up serving on the jury. But in his PCR filings, Smith identified several such jurors.

The PCR court found: "All four of the challenged jurors were struck. . . . A review of the evidence at this PCR trial simply does not support that [trial counsel] failed on this issue or that Smith was prejudiced in any way." Smith challenges the court's prejudice finding asserting that if he shows the three prongs of his *Jonas* claim, *Jonas* directs that "prejudice will then be presumed." 904 N.W.2d at 583. This means, Smith argues, "[n]o additional showing about the impartiality of the empaneled jurors is necessary." Thus, under his understanding of *Jonas*, the presumed prejudice under the *Jonas* test constitutes *Strickland* prejudice because it shows a "reasonable probability that, but for counsel's [failure to ask for two additional strikes of particular jurors], the result of the proceeding would have

been" reversal of his convictions and retrial before an impartial jury. *State v. Kuhse*, 937 N.W.2d, 622, 628 (Iowa 2020).

But, before we approach the prejudice prong of the *Strickland* test, we must determine whether trial counsel breached a duty. *Jonas* requires that counsel challenged the potential juror for cause, and that the court denied that challenge *erroneously*. *See* 904 N.W.2d at 583 (using the word "improperly"). Here, to prove a *Jonas* claim, Smith had to show the court denied the challenges for cause erroneously. But if the court's rulings were not erroneous, Smith has no valid *Jonas* claim, and counsel did not act deficiently in failing to request additional strikes.

Iowa Rule of Criminal Procedure 2.18(5)(k) allows a party to lodge a challenge for cause if the panelist "formed or expressed such an opinion as to the guilt or innocence of the defendant as would prevent the juror from rendering a true verdict upon the evidence submitted on the trial." "In determining whether a challenge for cause should be granted, the test is 'whether the juror holds such a fixed opinion of the merits of the case that he or she cannot judge impartially the guilt or innocence of the defendant.'" *State v. Linderman*, 958 N.W.2d 211, 218 (Iowa Ct. App. 2021) (citation omitted).

During voir dire, the defense attorney asked this question: "Let's say you hear from two or three witnesses that get up and give some evidence that demonstrates their reason and belief that the defendant committed this crime." Jurors Hu. and Ha. expressed that they would want Smith to testify in defense of himself. Later, a challenged juror, Juror K., held the following exchange with the defense attorney:

Q.: You heard the comments today. You heard these—[jurors'] comments, heard [juror's] comments. Would you agree with that statement that you feel it is necessary for the defendant to testify to come to a finding of not guilty? A.: I think it's important to get on that stand and defend yourself if you truly believe that you are innocent. And I'll be completely honest. If that person did not get on the stand and there was enough, even if it was one person, I would most likely believe them because the more I think about what we've been talking about and the very first question you asked, I don't know if I firmly believe that innocence until proven guilty. I honestly believe if someone is arrested or charged for something, they probably damn well prove to me that they did not do it.

Q. So you would, if I'm understanding you correctly, the scale of one to ten, innocent until proven guilty, you would strongly disagree? A.: Strongly be more towards the disagreeing. Yes. It's not what our rules are based on.

DEFENSE COUNSEL: I understand. I appreciate your candidness. Your Honor, I would move to strike [Juror K.] for cause.

THE COURT: State?

PROSECUTOR: Can I ask some questions before?

THE COURT: Yes.

PROSECUTOR: I want to ask a few questions about that. Obviously, we see everything that goes on on TV. We all have this idea, "If I didn't do it, I'd get up there and say I didn't do it." Do you believe that our system of justice works? A.: Most of the time.

PROSECUTOR: And one of the basic tendencies is someone does not have to testify or give evidence against themselves. Would you agree with that? A.: I would agree that's how it's supposed to work.

PROSECUTOR: So a lot of times when we're trying to determine if we believe something or we don't, we're weighing sides; right? We hear from X person and then we hear from Y person. When you're in a courtroom you will be told that we have to prove our case, whether they ever do anything or not. Can you set aside kind of that thought process of, "gosh, if I had done something I would want to yell from the rooftops I didn't" and understand there could be a million reasons why the defendant wouldn't take the stand? A.: Be hard—It's hard for me to understand that, understand that reason.

PROSECUTOR: Absolutely. When you say, "hard for you," and that's where we talked about too—I'm not picking on you—but, you know, would you be able to sit on a criminal jury because that's going to be the same in every single one. Anytime someone is charged with a crime, they do not ever have to say anything. And for our system to work we have to have people on the jury that understand that and can follow that. Is that something that you're saying you could not follow? A.: No. Yeah. No. I don't know. Maybe what I would need to have is some sort of defense against whatever.

I mean, whether it's not the defendant himself, there would need to be somebody that takes defense on whatever is proven or what you're trying to prove, otherwise I will be like you're guilty.

PROSECUTOR: You understand—. A.: You got nothing to give me.

PROSECUTOR: By sitting here in court he has said, "not guilty," so he has said, "I did not do that" just by simply saying, "not guilty." Is that enough? A.: No.

PROSECUTOR: I submit it to the Court.

THE COURT: [Defense counsel], based on her questions, anything else for the potential juror? DEFENSE COUNSEL: No. I stand by my objection.

THE COURT: So, ma'am—I appreciate everybody has different experiences in life. I know someone mentioned they're a welder. If I'd say, "Let me try that. I want to try and weld." And then someone tells me, "You have no idea what you're doing. Let me explain to you," and they instructed me how welding occurs. And then I'd change my mind, "Oh, okay. I will wear the shield" or whatever it may be. Similarly, I do not expect everybody in this room to understand how a jury trial works. You guys have not gone to law school, from what I understand. So if the Court instructs you on how a jury trial must be conducted to include the fact—and I'll give a more detailed instruction later—that there is no obligation or responsibility for the defendant to testify or to put on any evidence. It is a hundred percent the State's burden. Every case. Not just today's case. Every state it's the State's burden to prove that the person is not—the defendant is innocent until proven guilty. Is that something that even being instructed by the Court on the law—to which I'm not holding you to know that beforehand but now that I'm telling you that is the law—can you listen to the evidence presented by the State and come to a decision following my instructions, even if that may be a situation where the defendant chooses not to testify? Can you do that? A.: I can follow instructions.

THE COURT: Okay. Do you think that you can be a fair or impartial juror or would that be stretching it for you in this situation? A.: I can give it my best shot.

THE COURT: Kind of like what the State was saying earlier, best shot is kind of maybe I'll try. I think I need something a little more firm. Can you be fair and impartial in this case? A.: Yes.

THE COURT: Request is denied. You may continue.

Later still the parties spoke with Juror A., a retired prison guard, who stated:

I think it's important—If I put myself in his position, I would want to defend myself. Okay. And I can't be here and not—You cannot, I don't think, look at something and not put yourself in that position to kind of think your way through it. From when I have talked

to other inmates, they always wished they had gotten up and testified.

But defense counsel asked, "[W]ould you be able to follow the instructions of the Court regarding what the law is and what the State's obligation and burden is in this case and that the defendant sitting here has, indeed, said he's not guilty?" Juror A. responded, "I would follow the directions." Then:

> Q.: Do you feel that that belief that you have that the defendant for lack of better word should get up and defend himself, that that's a necessity here? A.: Yes, I do.
> Q. That it's a necessity? Is that a yes? A.: Yes.
> Q. Do you believe because of that strongly held belief that I could instruct you and the Court could instruct you to an instruction that a hundred percent goes against that, that the defendant does not need to present any evidence, that you would be able to follow that even given that strong a belief? A: I can do that. I will. Can. Will. Whatever you would like.

Following Smith's motion to strike, the court found,

> I've listened to the grounds [for disqualifying and in resistance] as well. And would it be hard? Absolutely. It should be hard. It should not be an easy task. We're asking a lot of everyone to sit here. Based on the response provided by . . . the challenged juror[s], I find the request for them to be excused is denied.

The State argues that the court properly refused to strike these jurors because both stated they could follow the law and the court's instructions.

*Jonas* cautioned against the court "rehabilitat[ing] the potential juror through persistent questioning regarding whether the juror would follow instructions." 904 N.W.2d at 575. Juror K. persistently refused to accept the tenet that a criminal defendant is innocent until proven guilty and that his testimony is not necessary to reach a not-guilty verdict. Even after a lengthy explanation from the trial court, Juror K. only parroted the phrase "I can follow instructions." Then, when asked directly if she could be an impartial juror, she answered tepidly she would give it

her "best shot." She only gave an unequivocal "yes" when admonished that her response was not good enough. Juror K.'s opinion that Smith would have to prove his innocence and that she would "need to have . . . some sort of defense . . . , otherwise . . . you're guilty," showed she had formed a fixed opinion on the merits of the case. Her lukewarm response that she would give her "best shot" to follow the rules gives little reassurance, despite the court's attempts to rehabilitate her earlier statements. So we conclude the district court abused its discretion when it refused to grant Smith's challenges for cause. Smith then had to use two peremptory strikes. Had counsel requested the additional strikes of particular jurors, a duty imposed by *Jonas*, Smith would have not only had two additional strikes to shape the jury, but would have been able on direct appeal to demonstrate prejudice and potentially have his conviction reversed and remanded for retrial by a new jury. We find that trial counsel was ineffective by failing to request the additional strikes of particular jurors.

We now turn to whether this failure satisfies the prejudice requirement in a PCR setting. Generally, in a PCR context, "[t]he crux of the prejudice component rests on whether the defendant has shown 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *State v. Kuhse*, 937 N.W.2d 622, 628 (Iowa 2020) (quoting *Strickland*, 466 U.S. at 694). We are aware of one case where a panel of our court has addressed a somewhat similar situation. *See Dixon v. State*, No. 16-2195, 2018 WL 3471833, at *7 (July 18, 2018). In *Dixon,* trial counsel failed to challenge for cause a prospective juror who, based on his

answers during jury selection, would have been released if challenged. The prospective juror ended up serving on the jury. *Id.* Our court noted:

> [T]his proceeding is not a direct appeal on a claim of error. This proceeding is a collateral attack on the defendant's conviction via a claim of ineffective assistance of counsel. To establish an entitlement to relief on this specific claim, the defendant must establish *Strickland* prejudice. This generally requires the defendant to prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Typically, this formulation requires proof that the outcome of the proceeding—that is the determination of legal guilt or innocence—would have been different. The State contends there is overwhelming evidence of Dixon's guilt, and Dixon thus cannot establish a reasonable probability that the result would have been different if juror M.H. had been removed for cause.
>
> While the State's argument has some appeal, we cannot agree the defendant failed to establish constitutional prejudice. As a general rule, it is true the defendant must establish a reasonable probability of a different outcome to warrant relief on an ineffective-assistance claim. However, this is not true in all circumstances. In certain circumstances, the deprivation of the right itself is sufficient to establish an entitlement to relief. We conclude the error at issue in this proceeding is sufficient to establish *Strickland* prejudice and an entitlement to relief.

*Id.* (citations omitted). Our court held that, because trial counsel failed to challenge the juror for cause, "Juror M.H.'s service on the jury resulted in actual prejudice to the defendant's fundamental right to be tried by a fair and impartial jury." *Id.* At *8. The court concluded that "actual prejudice" (a juror serving who should not) established *Strickland* prejudice even though it was not established to "*a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.*" *Id.* at *7–8 (emphasis added). In describing a "deprivation . . . sufficient to establish an entitlement to relief," our court cited *Krogmann. Id.* at *8; *see Krogmann*, 914 N.W.2d at 313 (describing structural error).

In this case, differing from *Dixon*, none of the four biased prospective jurors sat on the jury.  Rather, counsel failed to request additional peremptory strikes as required by *Jonas*, to both secure additional strikes to shape the jury and to preserve error for appeal.  Did this error result in a *Strickland* prejudice, structural error and prejudice, or constitutional prejudice as found in *Dixon*?

> The likelihood of a different result must be substantial, not just conceivable.  A defendant must show the probability of a different result is sufficient to undermine confidence in the outcome.  This standard requires us to consider the totality of the evidence, identify what factual findings would have been affected, and determine if the error was pervasive or isolated and trivial.

*Kuhse*, 937 N.W.2d at 628.

We find *Strickland* prejudice.  Since none of the four challenged jurors sat on the jury, counsel's failure to request additional strikes does not establish a reasonable probability that there would have been a different verdict if additional strikes had been awarded.  But this is not true as to the second purpose of requesting additional strikes—to preserve error for appeal.  Under our analysis, trial counsel's challenges for cause should have been granted by the trial court.  If counsel had requested additional strikes, the issue would have been preserved for appeal.  If counsel had preserved error, it is reasonably probable that the guilty verdict would be reversed on appeal applying *Jonas*.  Thus, counsel's failure amounts to *Strickland* prejudice.

As such, the conviction is reversed and the case remanded to the district court for further proceedings.

Because this issue is dispositive of the appeal, we need not address any error related to Juror A, nor any of Smith's other claims.

**REVERSED AND REMANDED.**

Tabor, P.J., concurs; Schumacher, J., dissents.

**SCHUMACHER, Judge** (dissenting).

I respectfully dissent from the majority opinion which vacates Smith's convictions on two counts of sexual abuse in the second degree based on a determination that Smith received ineffective assistance of counsel in jury selection. The district court's denial of Smith's application for postconviction relief (PCR) should be affirmed.

## I.    Ineffective Assistance Standards

To prevail on a claim of ineffective assistance of counsel, the applicant must demonstrate both breach of an essential duty and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Both elements must be proven by a preponderance of the evidence. *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). But both elements do not always need to be addressed. *Id.* If the claim lacks prejudice, it can be decided on that ground alone without deciding whether the attorney performed deficiently. *Id.* (citing *Strickland*, 466 U.S. at 697).

*Strickland* also defines the legal standard that governs the prejudice component of a claim for ineffective assistance of counsel. *Id.* at 143. *Strickland* establishes that prejudice exists when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. The *Strickland* standard does not modify our requirement that the defendant must establish the elements of a claim for ineffective assistance of counsel by a preponderance of the evidence. *See State v. Oetken*, 613 N.W.2d 679, 683 (Iowa 2000); *State v. Carrillo*, 597 N.W.2d 497, 499 (Iowa 1999); *State v. Wissing*, 528 N.W.2d 561, 563 (Iowa 1995). "Instead, in making the decision whether there is a reasonable probability that the

result of the trial would have been different, the burden of proof is on the defendant to establish this standard by a preponderance of the evidence." *Ledezma*, 626 N.W.2d at 145.

Smith raises three issues on appeal of his PCR proceeding. First, Smith asserts his counsel breached an essential duty by not requesting other peremptory strikes after the district court denied his challenges to excuse certain jurors for cause. Second, Smith asserts his counsel breached an essential duty by not moving for a mistrial because of jury misconduct. And third, Smith argues his counsel breached an essential duty by not calling four witnesses to testify at Smith's criminal trial. The application of the *Strickland* concepts to the specific claims raised in this case require affirmance of the district court's denial of Smith's application for relief.

## II. Analysis of Smith's Specific Ineffective Assistance of Counsel Claims

### A. Failure to Request Additional Peremptory Strikes

The majority opinion begins and concludes with Smith's first claim related to jury selection. As raised in his briefing, Smith contends his counsel was ineffective for failing to request additional peremptory strikes after he used two peremptory strikes when the district court denied his challenges for cause. Smith argues that because his counsel did not request other peremptory strikes after the district court improperly refused to disqualify biased jurors, his counsel was ineffective. Smith relies on *State v. Jonas*, 904 N.W.2d 566, 583 (Iowa 2017), which held that when (1) the trial court "improperly refuse[d] to disqualify a potential juror"; (2) a defendant "expend[ed] a peremptory challenge" to strike the biased

juror; and (3) and a defendant "specifically ask[ed] the court for an additional strike of a particular juror after his peremptory challenges [had] been exhausted," "prejudice will then be presumed."

Smith fails to demonstrate that the trial court erred in denying the challenge for cause related to the two jurors that Smith used peremptory strikes to remove from the box. Both jurors in questioning from counsel first indicated they would like to hear from the defendant in formulating an opinion. In follow-up questioning by the court during voir dire, both jurors indicated they could follow the instructions of the court. Neither juror expressed actual, unequivocal bias against Smith. *See State v. Lindemann*, No. 19-1632, 2021 WL 210986, at *8 (Iowa Ct. App. Jan. 21, 2021). The district court has wide discretion in ruling on challenges for cause under time constraints and with a firsthand view of the panelist's demeanor. *Jonas*, 904 N.W.2d at 574. Appellate courts should be resistive to second guessing the trial court's decisions on juror impartiality, which is influenced by many factors impossible to capture in a cold record. *Skilling v. United States*, 561 U.S. 358, 386–87 (2010).

At his criminal trial, Smith challenged four jurors for cause, which the district court denied. Smith expended two peremptory strikes, one for Juror A., juror number 6, and one for Juror Kn., juror number 24, while the State struck the other two challenged jurors. And while defense counsel did not ask for additional peremptory strikes, Smith identified no other juror he would have moved to strike

from the jury in his PCR petition.[4]  His criminal defense counsel testified at the PCR proceeding that he could have "absolutely" used two more strikes.  But his testimony ends there.  Defense counsel did not identify any juror that served in Smith's criminal trial that was not impartial.  In his written closing argument, Smith identified seven jurors that he could have used two more strikes on to form the jury.  But only three of those seven jurors are discussed in Smith's appellate briefing, Juror C., Juror K., and Juror P.  So the discussion that follows is limited to those specific jurors.

Smith's testimony at his PCR trial was limited to Juror C.[5]  Smith initially testified he talked to his defense counsel about this juror, but then changed his testimony, indicating he never informed his counsel that he wanted this particular juror to be challenged.  And while he testified at his PCR trial that he had exchanged words at a grain elevator with this juror about a year and a half before the criminal trial, the record of voir dire does not support this juror could not be impartial.  In his deposition, Smith testified that, although he had a few words with this juror at the grain elevator, "It wasn't nothing heated or nothing that would—I expected would have went any further than that."  None of the jurors on the panel conveyed they knew Smith.  And Smith's testimony on this issue was blurry, even calling the juror by an incorrect surname.  And as highlighted by the State, Smith appears to be too selective when highlighting some of Juror C.'s comments during

---

[4] Smith filed his original application for PCR on June 8, 2020.  Such was amended two times before trial, once on September 14, 2021, and again on February 3, 2022.

[5] There were two jurors with the same surname, a male and a female.  Smith's challenge is to the male juror with that surname.

voir dire, that "criminals have too many rights." Juror C. clarified that his comment was only for individuals already convicted of a crime, rather than those that have not been convicted.

As to Juror K., Smith alleges in his briefing that Juror K. could have been struck because this juror stated a "five out of ten" when asked whether the juror disagreed with the concept of innocence until proven guilty. But when read in the context of this juror's other responses, this juror appears to have misunderstood the original question, as the juror responded, "So, until you hear all the evidence, that's the way it is." And added, "Either you're innocent or you're guilty . . . . So that's why I said five."

As to Juror P., Smith indicates he would have used an additional strike, as this juror worked as a 911 operator. But a review of the voir dire transcript reflects that Juror P. clarified he took secondary 911 calls, mostly traffic complaints. No other suggestion was made during voir dire that he could not be a fair and impartial juror. Smith has failed to demonstrate that he was prejudiced by the failure of counsel to request more peremptory strikes.

B.    Juror Misconduct

Smith's second argument is that his trial counsel was ineffective in failing to address jury misconduct. Smith alleges that on the final day of trial his ex-wife saw the mother of the accused smoking a cigarette near jurors and also heard one of the jurors comment on Smith's guilt.[6] Smith's mother was also with Smith's ex-wife then, but his mother testified that she could not hear anything that the jurors

---

[6] Her testimony was different at the PCR proceedings than during her deposition, wherein she testified she heard multiple jurors discussing the defendant's guilt.

were saying. And at the PCR trial, defense counsel testified he had no recollection that this was ever brought to his attention. He also testified that if this had been brought to his attention, he would have made a record of it with the court. The district court made credibility findings in its ruling on Smith's application for PCR, finding Smith's ex-wife's testimony was "not credible or compelling." Deferring to that credibility finding, Smith has not shown that counsel breached an essential duty concerning juror misconduct.

### C.    Failure to Present Evidence Favorable to the Defense

Lastly, Smith alleges he received ineffective assistance of counsel when his counsel failed to present evidence favorable to his defense. Smith specifically argues his mother, his ex-wife, his daughter, and a Cass County Deputy should have been called to testify for the defense.

I begin with the noticeable absence of any argument about the prejudice that Smith suffered from the lack of testimony from these four witnesses. And defense counsel testified that he discussed the potential testimony of Smith's mother, daughter, and ex-wife with Smith, electing not to call these three witnesses as he believed the direct testimony and cross-examination would be damaging to Smith's case. To meet his burden to show counsel breached an essential duty, Smith "must demonstrate his trial attorney performed below the standard demanded of a 'reasonably competent attorney.'" *Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012) (quoting *Strickland*, 466 U.S. at 687). "We start with the presumption that the attorney performed competently and proceed to an individualized fact-based analysis." *Id.* The supreme court has made clear:

> [I]neffective assistance is more likely to be established when the alleged actions or inactions of counsel are attributed to a lack of diligence as opposed to the exercise of judgment. Improvident trial strategy, miscalculated tactics or mistakes in judgment do not necessarily amount to ineffective counsel. When counsel makes a reasonable tactical decision, this court will not engage in second-guessing. Selection of the primary theory or theories of defense is a tactical matter.

*Id.* (alteration in original) (internal quotations and citations omitted). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. I conclude Smith has not demonstrated a breach of an essential duty regarding these three witnesses.

As to the final witness, the Cass County Deputy, Smith argues he should have been called to testify that after his initial investigation he did not believe there was sufficient evidence to charge Smith with a crime. But this evidence would be inadmissible, as the decision to file a trial information rests on the shoulders of a prosecutor, not law enforcement. *See State v. Iowa Dist. Ct.*, 568 N.W.2d 505, 508 (Iowa 1997). And it is settled law that witnesses are not allowed to testify about the credibility of the evidence. *See State v. Tyler*, 867 N.W.2d 136, 154 (Iowa 2015). Our system of justice vests the jury with the function of evaluating a witness's credibility. *Id.* The reason for not allowing this testimony is that a witness's credibility "is not a 'fact in issue' subject to expert opinion." *State v. Dudley*, 856 N.W.2d 668, 676 (Iowa 2014). That is a jury function. *State v. Morgan*, 877 N.W.2d 133, 138–39 (Iowa Ct. App. 2016). Defense counsel did not breach

an essential duty by electing to not call the deputy to testify about sufficiency of the evidence.

Although Smith raises an issue of cumulative error, he did not do so until his reply brief. As such, cumulative error is not addressed in this dissent.

**III. Conclusion**

As Smith failed to demonstrate prejudice in regard to the peremptory strikes and failed to prove a breach of duty by his trial counsel regarding jury misconduct and defense witnesses, the district court's denial of Smith's PCR application should be affirmed.